UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-62398-CIV-COHN/SELTZER

IRMA MOTEN,

      Plaintiff,

v.

BROWARD COUNTY, FLORIDA,

      Defendant.
_____/

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Broward County's ("the County's") Motion for Summary Judgment [DE 49] ("Motion"). The Court has considered the Motion, Plaintiff Irma Moten's Response [DE 66], Defendant's Reply [DE 68], the argument of counsel at the February 16, 2012 hearing, and the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

In January 2001, Defendant Broward County ("the County") hired Plaintiff Irma Moten, an African American female, as a forensic technician for the County's Medical Examiner's Office. See Moten's Personnel Action Form [DE 49-1]. A forensic technician is responsible for assisting a medical examiner in conducting autopsies and forensic procedures at the morgue. Declaration of Dean Reynolds [DE 49-2] ("Reynolds Declaration") ¶ 6; Forensic Technician Job Description [DE 49-3].

Generally the office staffed four forensic technicians, but around October 2008, there were only three working. Id. Therefore, the Medical Examiner advertised to hire

a fourth forensic technician.  Reynolds Decl. ¶ 5.  The fourth position had been open for several months, during which time the remaining three forensic technicians had been working longer hours.  Id. ¶ 7.  The Medical Examiner's Office interviewed nine individuals for the fourth position.  Declaration of Doctor Stephen Cina [DE 49-4] ("Cina Declaration") ¶ 7.  The interview panel consisted of Dr. Stephen Cina, Deputy Medical Examiner, and Dean Reynolds, a Forensic Technician Supervisor.  Reynolds Decl. ¶ 9; Cina Decl. ¶ 8.

One of the top ranked interviewees was Patrick Karr, a white male.  Cina Decl. ¶ 9; Reynolds Decl. ¶ 10.  Dr. Cina and Mr. Reynolds interviewed Mr. Karr over the phone.  Cina Decl. ¶ 10; Reynolds Decl. ¶ 10.  Mr. Karr had a college degree in a forensic related field, several years of experience, and excellent recommendations from the North Dakota state medical examiner, where he had previously worked.  Cina Decl. ¶ 10.  Based on the telephone interview, Mr. Karr's education, and his credentials, Dr. Cina offered him the position.  Id. ¶ 11.

Dr. Cina offered Mr. Karr an hourly rate of $17.0837, 10% above the minimum starting pay.  Cina Decl. ¶ 12.  According to Dr. Cina, "Mr. Karr was offered the hourly rate based on the urgent need to fill the position, in consideration of his relocation from North Dakota, and that he had prior experience."  Id.  Neither Dr. Cina nor Mr. Reynolds had ever met Mr. Karr in person before they offered him the job.  See Cina Decl. ¶ 15; Reynolds Decl. ¶ 13.  At the time of the offer, Plaintiff was making $16.6230 an hour, see Moten Pay History [DE 49-6], but Dr. Cina claims that he was unaware of Plaintiff's hourly rate or the fact that it was 46 cents an hour less than the amount he offered to Mr. Karr.  Cina Decl. ¶¶ 13-14.

Ultimately, Mr. Karr accepted the offer, passed the County's pre-employment physical and drug test, and began working on February 16, 2009. See Karr's Personnel Action Form [DE 49-8]; Cina Decl. ¶ 16. In October 2009, Plaintiff's hourly rate was increased to $17.1217, see Moten Pay History, and Mr. Karr's hourly rate was increased to $17.5962, see Karr Pay History [DE49-9]. Finally, in May 2010, Plaintiff's hourly rate was increased to $17.9087. See Moten Pay History. Neither party disputes that by May 2010, Mr. Karr was no longer earning a higher salary than Plaintiff.

On December 9, 2010, Plaintiff filed this action against the County. See Complaint [DE 1]. Plaintiff contends that race was as substantial motivating cause of the County's actions, and that the County's actions were based "solely on the factor of sex." See Amended Complaint [DE 7] ¶¶ 23, 34. Therefore, she brings the following claims: race discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count I); race discrimination in violation of Florida Civil Rights Act of 1992 ("FCRA") (Count II); and violation of the Equal Pay Act, 29 U.S.C. § 206 (Count III). See Am. Compl.

On October 27, 2011, the County filed the instant Motion for Summary Judgment on all three claims. Thereafter, on February 16, 2012, the Court granted the County's Second Motion to Dismiss Count III of Plaintiff's Amended Complaint [DE's 69, 78], and entered a Partial Judgment [DE 79] as to Count III. Accordingly, the Motion for Summary Judgment is moot as to Count III, and the only remaining claims are those raised in Counts I and II.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

### III. ANALYSIS

The County argues that Plaintiff cannot prevail on her Title VII and FCRA claims (Counts I and II) because she cannot make out a *prima facie* case of race discrimination.[1]  The County further argues that even if Plaintiff could make out a *prima facie* case, Mr. Karr was hired for legitimate, non-discriminatory, and non-pretextual reasons.

Under both Title VII and the FCRA, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1).  A plaintiff may establish a *prima facie* case of discrimination by "statistical proof of a pattern of discrimination," "direct evidence of discrimination, which consists of evidence which, if believed, would prove the existence of discrimination without inference or presumption," or "circumstantial evidence to prove discriminatory intent."  Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (citations omitted).  In the usual case, as in this case, direct evidence is not present and the plaintiff must rely on circumstantial evidence.  Id. at 1562.  When relying on circumstantial evidence, courts apply the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

---

[1] Federal case law interpreting Title VII also applies to cases arising under the FCRA.  See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387, 1389 (11th Cir. 1998); Brown Distrib. Co. of W. Palm Beach v. Marcell, 890 So. 2d 1227, 1230 n.1 (Fla. Dist. Ct. App. 2005).

### a. McDonnell Douglas Framework

Under the McDonnell Douglas framework, a plaintiff establishes a *prima facie* case of race discrimination by showing each of the following elements: (1) the plaintiff belongs to a racial minority; (2) she was subjected to an adverse job action; (3) her employer treated similarly situated employees of other races more favorably; and (4) she was qualified to do the job.  Holifield, 115 F.3d at 1562; see also McDonnell Douglas, 411 U.S. at 802; Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1310 (11th Cir. 1998), superceded in part on other grounds, 151 F.3d 1321 (11th Cir. 1998).  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  Holifield, 115 F.3d at 1562 (citations omitted).

If the plaintiff presents a *prima facie* case, then the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]."  Jones, 137 F.3d at 1311.  If the defendant meets this burden, then the plaintiff may attempt to show that the proffered reason was a mere pretext for the defendant's discriminatory acts.  Id. at 1311; see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

### b. *Prima Facie* Case

The County contends that Plaintiff cannot get past the first step of the McDonnell Douglas test.  Specifically, the County argues that Plaintiff cannot make out a *prima facie* case because there is no evidence that the County had actual knowledge of Mr. Karr's race prior to offering him the position and the hourly rate.

"Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001).  If the decision-maker had no actual knowledge of the applicant's race, then the employer could not have discriminated and there is no *prima facie* case under Title VII or the FCRA.  See id.; see also Lubetsky v. Applied Card Sys. Inc., 296 F.3d 1301, 1305-06 (11th Cir. 2002) (employer cannot discriminate based on religion if employer does not know plaintiff's religion); Robinson v. Adams, 847 F.2d 1315 (9th Cir. 1987) ("An employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race.").

The County maintains that Dr. Cina and Mr. Reynolds did not know Mr. Karr's race when they hired him, so they could not have discriminated based on race.  See Mot. at 9-10.  Importantly, discrimination requires *actual knowledge*; constructive knowledge is insufficient.  See Silvera, 244 F.3d at 1261.  Dr. Cina explained in his declaration, "I did not know Mr. Karr's race at the time he was conditionally offered the position and hourly rate because the interview was conducted telephonically.  Mr. Karr's race was obviously not discussed during the interview."  Cina Dec. ¶ 15.  Mr. Reynolds similarly stated in his declaration, "I did not know Mr. Karr's race when we interviewed him telephonically.  Mr. Karr's race was obviously not discussed during the interview."  Reynolds Decl. ¶ 13.

In response, Plaintiff submits a purported copy of Mr. Karr's driver's license bearing his photograph, see Driver's License [DE 67], and suggests that Dr. Cina and Mr. Reynolds must have known Mr. Karr's race based on his driver's license picture, see Resp. at 4.  However, Plaintiff fails to point to any record evidence that the County

7

actually had the driver's license in its possession when it offered Mr. Karr the position. Mr. Karr's resume does not include his driver's license or any other indication of his race, see Patrick A. Karr's Resume [DE 49-7], the job description does not require applicants to submit a driver's license before interviewing, see Forensic Technician Job Description, and Plaintiff submits no other evidence showing that the County was in possession of Mr. Karr's driver's license on or before the date when Dr. Cina offered him the position. The only record evidence submitted reveals that Dr. Cina and Mr. Reynolds did not know Mr. Karr's race when they offered him the position. See Cina Dec. ¶ 15; Reynolds Decl. ¶ 13.

Plaintiff also argues that Dr. Cina met Mr. Karr when he came to Florida to take his pre-employment drug test and physical. See Resp. at 4-6; Declaration of Irma Moten [DE 65] ("Moten Declaration") ¶ 8. This argument is inapposite. Dr. Cina had already offered Mr. Karr the position and the hourly rate before the trip to Florida. See Cina Decl. ¶ 15. Though the offer was conditional because Mr. Karr still had to pass the County's pre-employment physical and drug test, see id. ¶ 16, there is no evidence that any terms of the offer changed after Dr. Cina met Mr. Karr. Further, as the County notes in its Reply, an employer may condition an offer on the results of such tests, but the employer can only withdraw the offer after the tests based on job-related criteria and consistent with business necessity. 42 U.S.C. § 12112(d)(3); 29 C.F.R. § 1630.14(b)(3); Reply at 2 n.1.

Finally, Plaintiff notes that one month after Mr. Karr's February 2009 start date, she raised the issue of the salary inequity, and the County failed to correct the inequity. Id. at 6. This argument is also meritless. Race discrimination requires some adverse

employment action.  Holifield, 115 F.3d at 1562.  By the time Plaintiff approached the County, the decision to hire Mr. Karr and the amount of his pay had already been determined, and as mentioned above, these decisions were not racially motivated. Though Plaintiff also points out that "in October 2009, Karr's hourly salary was increased to 17.59 and Plaintiff's was increased to 17.12," Resp. at 6, she fails to explain how the fact that she and Mr. Karr both received raises of a comparable amount shows race-based discrimination.  At the February 16th hearing, the County explained that both employees received a customary 3% raise.  They were treated equally, and the difference between their pay did not change.

Accordingly, Plaintiff has not met her burden to present a *prima facie* case of race discrimination, and summary judgment will be entered in the County's favor.  Even if Plaintiff had made out a *prima facie* case, however, as explained below, the County has presented legitimate, non-discriminatory, and non-pretextual reasons for offering Mr. Karr a higher pay rate.

### c. The County's Proffered Reason for Paying Mr. Karr at a Higher Rate

As mentioned above, if a plaintiff presents a *prima facie* case, then the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]," Jones, 137 F.3d at 1311.  The County has proffered such a reason here.  Dr. Cina stated, "There was an urgency to fill the position as the position was vacant for several months and as a result the [] other Forensic Technicians were fatigued and at risk for physical injury."  Cina Decl. ¶ 6; see also Reynolds Decl. ¶ 7. Mr. Reynolds further explained, "With only three Forensic Technicians the schedule

was stretched and required the other Forensic Technicians to work long hours . . . . [T]he work can be physically demanding and requires the use of sharp instruments such as a scalpel.  Forensic Technicians are also required to be precise when performing their duties because a cause of death must be medically determined by the Medical Examiner." Reynolds Decl. ¶ 7.  Also, Mr. Karr was living in North Dakota at the time of his interview, so he would have to relocate to Florida if he accepted the position.  Mot. at 11; Karr Resume.  The County states that it offered Mr. Karr a higher pay rate to increase the likelihood that he would accept the position and to help defray the expenses he would incur in moving to Florida.  Mot. at 11; see also Cina Decl. ¶ 12.  Together, this evidence amounts to a legitimate, non-discriminatory reason that the County offered Mr. Karr a higher pay rate.

### d. Pretext

Once a defendant meets its burden to articulate a legitimate, non-discriminatory reason for the adverse employment action, then the plaintiff may attempt to show that the proffered reason was a mere pretext for the defendant's discriminatory acts.  Jones, 137 F.3d at 1311; see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Plaintiff has attempted to show pretext here, but her attempts are insufficient.

Plaintiff denies that there was an urgent need to fill the fourth Forensic Technician position based on her own assertion that "[d]uring the immediate period before the [County] hired Patrick Karr, Plaintiff and the other two remaining technicians enjoyed the ability to work overtime and the increased pay that accompanied it." Resp. at 2; Declaration of Irma Moten [DE 65] ("Moten Declaration") ¶ 4.  She states that she, personally, was neither fatigued nor at enhanced risk of physical injury, and that she

saw no urgency to fill the fourth position.  Resp. at 2; Moten Decl. ¶¶ 5, 6.  However, Plaintiff's personal opinion of her work environment does not serve as a substitute for Dr. Cina's and Mr. Reynold's business judgment.  "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).  Plaintiff may disagree with the County's business judgment, but she has not rebutted it.

Further, as the County notes, even if Dr. Cina and Mr. Reynolds were mistaken in their assessment that the three Forensic Technicians were fatigued and overworked, such a mistake would not show pretext.  The Eleventh Circuit has held that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  Pitts v. Hous. Auth. for City of Huntsville, Ala., 262 Fed. App'x 953, 955-56 (11th Cir. 2008) (citing Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)).  Similarly, the County was entitled to pay one employee more than another for "good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  See id.  The County's decision to pay Mr. Karr more based Dr. Cina's and Mr. Reynold's assessment that the Forensic Technicians were fatigued and overworked, along with their intent to defray Mr. Karr's moving expenses, constitutes a non-discriminatory reason.

To avoid summary judgment, Plaintiff "must introduce significantly probative

11

evidence showing that the asserted reason is merely a pretext for discrimination." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir.1993); see also Pitts, 262 Fed. App'x at 956. A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993); see also Pitts, 262 Fed. App'x at 956. Plaintiff has failed to produce significantly probative evidence that the County's reasons for hiring Mr. Karr at a higher rate of pay were false or that discrimination was the real reason.

Accordingly, Plaintiff has failed to establish a *prima facie* case of race discrimination. Even if she had established a *prima facie* case, the County has proffered a legitimate, non-discriminatory, and non-pretextual reason for offering Mr. Karr a higher rate of pay. Accordingly, the County is entitled to summary judgment on Plaintiff's Title VII and FCRA claims (Counts I and II).

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Broward County's Motion for Summary Judgment [DE 49] is **GRANTED in part and DENIED as moot in part**;
2. The motion is **GRANTED** as to Counts I and II;
3. The motion is **DENIED as moot** as to Count III;
4. Consistent with this ruling, the Court will enter a separate final judgment on Counts I and II.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 16th day of February, 2012.

*James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF